## HEITZ v. ATLEE.

1. **Surety**: DISCHARGE OF BY CREDITOR'S RELEASE OF FUND CHARGED WITH PAYMENT OF DEBT. The release by a creditor of a collateral security operates to discharge a surety for the same debt to the extent of the security released, unless the surety consents to such release. So *held* in this case, where a receiver had in his hands funds sufficient to pay the debt, and he had been ordered by the court to pay it, but the creditor, without the consent of the surety, accepted a portion of the amount due, and receipted to the receiver for the whole debt, which receipt the receiver used in making his settlement and procuring his discharge.

*Appeal from Lee District Court.*

THURSDAY, DECEMBER 10.

ACTION upon a promissory note executed to the plaintiff by one I. R. Atlee and signed by the defendant as surety. The

defendant for answer averred in substance that the plaintiff took a chattel mortgage from the principal, I. R. Atlee, as security; that he obtained a decree of foreclosure, and by the decree he obtained a lien upon a fund in the hands of a receiver, which fund was more than sufficient to pay the plaintiff, and that the plaintiff executed to the receiver a receipt in full of the decree. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Craig, Collier & Craig* and *S. M. Casey*, for appellant.

*Miller & Son*, for appellee.

ADAMS, J.—The undisputed evidence showed that in the action in which the plaintiff's decree of foreclosure was obtained a receiver was appointed to take charge of and sell the mortgaged property; that he did sell it, and realized a large sum of money, which was more that sufficient to pay the plaintiff and discharge all prior liens; that the plaintiff's decree was for $1,214.45; that the plaintiff, however, accepted $875.65, and executed to the receiver a receipt in full for his decree. After verdict for the plaintiff, the defendant moved for a new trial, on the ground that the verdict is not supported by the evidence. The court overruled the motion, and the defendant assigns as error that the verdict is not supported by the evidence. The defendant insists that in the action of foreclosure against I. R. Atlee the note became merged in the decree, so far as I. R. Atlee was concerned, and that the execution of the receipt to the receiver in full of the decree became, when filed in court by the receiver, a virtual satisfaction of the decree; that the plaintiff thereby lost all further remedy against I. R. Atlee, and cannot now be allowed to recover against his surety.

The mere receipt of a portion of an acknowledged debt, though accepted at the time as full payment, does not preclude the creditor from recovering the balance. But whether this

rule is applicable where the claim has been put in judgment, and sufficient money to pay it has passed into the hands of a receiver as trustee of the creditor, and the creditor, with full knowledge of the fact, and in the absence of fraud, accepts a portion of the debt, and executes a receipt to the receiver in full, and the receipt is filed in court as a basis of the receiver's discharge, is a question which, in the minds of some of the members of the court, admits of doubt. But we do not think that the case is such that we are necessarily required to determine it.

It is undisputed that the execution of the receipt, under the circumstances, operated as a release of the plaintiff's lien upon the fund in the receiver's hands. Now, the release of a collateral security operates to discharge, for that much, a surety for the same debt, unless the release is made with the surety's consent. As to whether the plaintiff in the case at bar released his lien for the unpaid balance with the defendant's consent is a question upon which the parties differ. The plaintiff admits that the defendant told him that he had a judgment for the whole amount, and not to take less; but he says that this was after he had already signed the receipt. The defendant testified that the plaintiff complained to him that the receiver would not pay him; that he told him to go to the judge; that the judge had ordered the receiver to pay it, and would make him pay it; and that he told him not to take any until he could get the whole. This, it appears, was when the plaintiff was complaining that the receiver would not pay him, and must have been before the plaintiff had settled with the receiver. The defendant's testimony upon this point is not expressly denied. The plaintiff relies mainly upon a certain written agreement signed by the defendant and others, the effect of which was to bind certain mortgagees to make a rebate from their claims. It is not contended that the agreement bound the plaintiff. He refused to sign it, or to become a party to it in any way. His position is that, while it did not bind him to make a rebate,

it allowed him to do so, and that the defendant, in signing the agreement, consented to the plaintiff's making a rebate.

The facts which gave rise to the making of the agreement remain to be stated. I. R. Atlee had been doing business as a merchant, and became involved. He had borrowed money of the Bank of Fort Madison, and also of the plaintiff, Heitz. The defendant had become surety for both loans. As I. R. Atlee's embarrassment increased, he executed a chattel mortgage to the bank and another to Heitz. He also executed chattel mortgages to other creditors, but not to all, and among the unsecured were E. S. Jaffrey & Co. They attached subsequently to the execution of the mortgages, and brought an action to set aside the mortgages as void. The mortgagees filed cross-petitions, and asked for a foreclosure. A receiver was appointed, and the goods were converted into money. Some of the mortgagees, having apprehension as to whether the mortgages would be sustained as against E. S. Jaffrey & Co.'s attachment, formed the plan of acquiring E. S. Jaffrey & Co.'s claim. To accomplish this it was thought necessary that the mortgagees should not demand the full payment of their mortgage claims out of the funds in the receiver's hands, but that they should make a *pro rata* rebate, and use the fund released by the rebate in paying for the E. S. Jaffrey & Co. claim. An agreement for a *pro rata* rebate was drawn up, and signed by all the mortgagees except the plaintiff. He was asked to sign it, but refused. The others, however, proceeded without him. The claim of E. S. Jaffrey & Co. was purchased, and an assignment thereof was made in trust to the defendant, J. C. Atlee. When the time came for payment by the receiver, it appears that he claimed that the plaintiff should make a *pro rata* rebate, like the other mortgagees, and made that a pretense for withholding payment altogether. The plaintiff finally yielded, and accepted a portion of his claim as a full payment of the whole. As to whether the defendant ever asked the plaintiff to sign the agreement does not appear, nor would the case be different

if he had. The agreement was devised as a part of the plan of acquiring the E. S. Jaffrey & Co. claim. The defendant was, we think, interested in the acquiring of the claim. That claim was being asserted as against the mortgages, and two of the mortgages were given to secure claims upon which the defendant was surety. But, whatever desire, if any, the defendant had that the plaintiff should sign the agreement in the outset, he could, so far as we can see, have had no such desire at the time the defendant settled with the receiver and released his lien. The E. S. Jaffrey & Co. claim had been acquired, and the rights of all parties had been adjudicated. It was for the defendant's interest that the plaintiff should be paid in full from the funds in the receiver's hands according to the adjudication. It is easy to believe, as he testified, that he objected to the plaintiff's making any release, and we are unable to discover the slightest evidence to the contrary.

There is some evidence tending to show that the defendant told the plaintiff that he would pay him the difference between what he would get from the receiver and the principal of his claim, but there is no evidence that the defendant told him so after the E. S. Jaffrey & Co. claim had been acquired and the rights of all parties had been adjudicated. If the defendant told him that before, it could not properly be construed into a consent afterwards. The circumstances had materially changed, as the plaintiff well knew. We think that upon the undisputed evidence the plaintiff is not entitled to recover.

REVERSED.